**United States District Court**
**Northern District of Alabama**
**Southern Division**

03 JUN -4 PM 1: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **Teresa Alexander,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-01-CO-2624-S |
| | ] CV-02-CO-2010-S |
| **Jefferson County Health Department,** | ] |
| Defendant(s). | ] |

ENTERED
JUN 0 4 2003

**Memorandum of Opinion**

## I.  Introduction.

Presently before the court is a motion for summary judgment, filed by the defendant on January 15, 2003. [Doc. # 45.] The parties have had a full and fair opportunity to fully brief the issues raised therein,[1] and the motion is now ripe for decision. Upon due consideration, the motion for summary judgment will be granted in all respects.

## II.  Facts.[2]

The plaintiff, Teresa Alexander ("Ms. Alexander"), a Caucasian female, began working for the defendant, the Jefferson County Department of Health ("Health Department"), in September 1992, as a dental hygienist in the Health Department's sealant

---

[1] The plaintiff filed a responsive submission on February 5, 2003, [Doc. ## 51-52], which the court struck for non-compliance with Exhibit D of the court's initial order on February 28, 2003, [Doc. # 55]. The plaintiff has not attempted to cure her non-compliance with Exhibit D as of the date on which this memorandum opinion is entered.

[2] The facts set out below are gleaned from the defendant's submission of facts claimed to be undisputed and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



program. She resigned from her position in 1994, and moved out-of-state, but was rehired by the Health Department as a dental hygienist in the sealant program in January 1997. According to testimony by Dr. Ronald Elliot ("Dr. Elliot"), the director of Dental Health Services for the County, a Caucasian male, approximately seventy-three percent of the hygienists who are employed by the Health Department are African-American, while approximately sixty-six percent of the entire dental health services staff are African-American. At all times relevant to this lawsuit, Ms. Alexander's immediate supervisor was Natalie Williams ("Ms. Williams"), an African-American female,[3] and the individual who was primarily responsible for discipline in the Health Department was Dr. Carole Samuelson ("Dr. Samuelson"), a Caucasian female.

### A.    October 27, 2000, incident.

On October 27, 2000, while Ms. Alexander sas working at the Bessemer Dental Clinic, a patient was late for her thirty-minute dental appointment scheduled to begin at 8:00 a.m. The plaintiff testified that the patient arrived at 8:12 a.m., while records from the dental clinic indicate that the patient reported for her appointment at 8:09 a.m. In any event, pursuant to her understanding of the usual procedure for late patients,[4] Ms. Alexander took x-rays of the patient's mouth and, without first performing a prophy, or teeth cleaning, asked her supervising dentist on that occasion, Dr. Dwight Williams ("Dr. Williams"), to perform

---

[3] Ms. Alexander believes that Ms. Williams treated her unfairly on account of her race. As evidence of Ms. Williams' racial animus, Ms. Alexander testified in her deposition that on several occasions, Ms. Williams referred to Ms. Alexander as "too white" and suggested that she get some sun. (Alexander Dep. at 192-93.)

[4] Apparently, if a patient is on time for her scheduled appointment, the staff is able to x-ray her mouth, clean her teeth, and have her examined by the dentist during the thirty minute appointment. If a patient is late, it is not always feasible to perform all three of these functions in what remains of the thirty minute appointment.

an examination of the patient. Dr. Williams asked Ms. Alexander if she had performed a prophy on the patient yet, and when she responded in the negative, he asked her to clean the patient's teeth. Ms. Alexander asked to speak with Dr. Williams outside, whereupon she explained to him that because the patient was late, she had foregone the prophy in favor of the dental exam so as to ensure that she would get to all of her patients that morning. Dr. Williams ordered her to clean the patient's teeth, and spoke to her in a rude tone, which upset Ms. Alexander.[5] Ms. Alexander then requested to speak to Dr. Elliot, whom she called, crying and upset, and requested permission to go home for the day. Dr. Elliot, who is white, urged the plaintiff to stay at work until the afternoon, when another hygienist was scheduled to come to the clinic. According to the plaintiff, she told Dr. Elliot she was too upset to stay, and he told her to fill out an off-duty slip and go home. According to Dr. Elliot, he informed the plaintiff that if she left, there would be consequences. Ms. Alexander left work at approximately 8:45 a.m., and was paid for a day of sick leave for that day.

Sometime thereafter, Ms. Alexander requested that she no longer be assigned to work at the Bessemer Dental Clinic so as to avoid any further contact with Dr. Williams. Dr. Elliot told her that he could not guarantee that she would no longer be assigned to the Bessemer Clinic. However, Ms. Alexander testified that previously, an African-American assistant, Leola Spann ("Ms. Spann"), requested to no longer be assigned to the Bessemer Clinic because of a conflict between her and another assistant, and "to this day [she] has never gone back." (Alexander Dep. at 157.)

---

[5] Ms. Alexander testified that Dr. Williams "can be disrespectful at all times . . . [t]o anyone, patients included." (Alexander Dep. at 61.)

On November 2, 2000, Ms. Alexander received a Notice of Contemplated Disciplinary Action from Dr. Elliot, which informed the plaintiff that the Health Department was considering disciplining her for insubordination and neglect of duty in connection with the October 27, 2000, incident. On November 15, 2000, the Health Department issued the plaintiff a three-day suspension for those offenses, which was signed by Dr. Samuelson.

**B.    Betty Davis.**

Ms. Alexander alleges that Dr. Williams had a similar run-in with Betty Davis ("Ms. Davis"), an African-American senior hygienist, in July 1998. However, Ms. Alexander's knowledge of the facts underlying this incident is not based on personal knowledge of the incident; Ms. Alexander testified in her deposition that her knowledge of the incident came from what Ms. Davis told her occurred. Ms. Davis told the plaintiff that Dr. Williams instructed her to clean the teeth of a patient whose gums were bleeding profusely. Ms. Alexander testified that Ms. Davis did not clean the patient's teeth as directed, and she left the clinic. As far as Ms. Alexander knows, Ms. Davis was not formally disciplined for this incident, but rather received one or two "needs improvement" notations on her evaluation that year.[6] However, Dr. Elliot testified that Ms. Davis did, in fact, complete the work on the patient in question, and, rather than leaving immediately, stayed at the clinic until lunch-time to enable her afternoon patients to be rescheduled. Furthermore, Dr. Elliot testified that Ms.

---

[6] The yearly evaluations, which are completed by employees' immediate supervisors, rate employees in ten different categories; the lowest score one can receive in a category is "below expectations," the next lowest score is "needs improvement," the next lowest score is "meets expectations," the second highest score is "commendable," and the highest score is "exceeds expectations."

Davis got permission from her supervisor to leave at lunch time, and he testified that he does not know whether Ms. Davis was disciplined for leaving work that day.

C. **The jury duty incident.**

On Monday, November 27, 2000, the plaintiff appeared for jury duty, but was told that she need not return to jury duty any further that week. Rather than returning to work the following day, the plaintiff took the rest of the week off work, visiting her mother and shopping, and returned to work on December 4, 2000. When the plaintiff became aware that there might be a problem with her having served only one day of jury duty, she retroactively requested permission to have November 28-December 1, 2000 as vacation days; this request was submitted on January 12, 2001, and was approved by her supervisor, Ms. Williams.

Ms. Alexander received a "below expectations" evaluation in two out of ten areas on February 9, 2001, on account of the incident with Dr. Williams and the absences following her jury service.[7] On February 12, 2001, the Health Department issued the plaintiff another Notice of Contemplated Disciplinary Action, identifying the reason therefor as the plaintiff's absent without leave (AWOL) status following her jury service. The plaintiff received a Notice of Termination on February 22, 2001, which notice was issued for the plaintiff's AWOL incident, and was signed by Dr. Samuelson.

On February 23, 2001, Ms. Alexander appealed her dismissal to the Personnel Board of Jefferson County, and on February 26, 2001, she filed a charge of discrimination with the

---

[7] Ms. Alexander avers generally Ms. Williams gives better evaluations to a coworker, Nicole Jones ("Ms. Jones"), who is African-American and a friend of Ms. Williams, than to Ms. Alexander, for work that Ms. Alexander considers to be less stellar than her own.

EEOC. In her notice of appeal to the Personnel Board, Ms. Alexander admitted to her guilt of the charges against her (AWOL), but alleged that the action taken against her was too severe in comparison with her infraction. The Hearing Officer issued his recommendation on August 28, 2001, in which he recommended that the plaintiff be reinstated without back-pay because Ms. Williams had approved Ms. Alexander's retroactive request for leave for the dates she was AWOL. On September 25, 2001, the Personnel Board accepted the Hearing Officer's recommendations and retroactively suspended the plaintiff without pay from the effective date of her termination to the beginning of the next pay period. The plaintiff returned to work in October 2001, and now works as a dental hygienist in the trailer program.

### D. Alfredda Mardis.

The plaintiff testified that an African-American employee at the Health Department, Alfredda Mardis ("Ms. Mardis"), engaged in conduct similar to that for which Ms. Alexander was terminated, but that Ms. Mardis did not receive a commensurate degree of discipline. Ms. Mardis is a clerk in the mail room at the central office of the Health Department. She served on jury duty on June 5 and 6, 2000. Although the case for which Ms. Mardis was a juror concluded on June 6, 2000, Ms. Mardis believed that she was required to report for jury duty on June 7, 2000, as well. She received this information from the court reporter for the case, who told Ms. Mardis, during a break in the proceedings on June 6, that she had to come back June 7, even if the case was completed June 6. Ms. Mardis therefore reported to jury duty on June 7, but another juror who had served on the jury with her told her that she did not need to be there that day, so she visited with a friend who

worked in the county jail, and did not report to work on that day. On July 19, 2000, Ms. Mardis was issued a Notice of Contemplated Disciplinary Action because she failed to notify her supervisor of her ability to return to work on June 7, 2000. Ms. Mardis was issued a one-day suspension, signed by Dr. Samuelson, for being AWOL.

### E. Denial of merit raise and promotion.

On November 28, 2001, the plaintiff was informed that she would not receive the merit increase she believes she was due in February 2001. Because Ms. Alexander received two "below expectations" scores on her February 2001, performance evaluation as a result of the incident involving Dr. Williams and her AWOL status after jury duty, she was not eligible for the merit increase pursuant to Health Department policy.[8]

Ms. Alexander alleges that she was denied a promotion to the position of senior hygienist in either February 2001, or February 2002.[9] Ms. Alexander admits that she would not have been eligible for a promotion that was granted to Ms. Jones, an African-American hygienist, in February 2001, because she had been terminated. Dr. Elliot testified that due to budget constraints, the Health Department decided to eliminate all vacant senior hygienist positions in November or December 2001;[10] therefore, according to the defendant,

---

[8] Specifically, the evaluation provides that "[t]o receive a merit increase, an employee cannot receive two or more marks in the "[b]elow [e]xpectations" column." [Doc. # 48, Ex. 27.]

[9] The complaint in the second-filed of these consolidated cases indicates that Ms. Alexander was denied a promotion in 2002; however, in her deposition, she testified that she could not receive the promotion because she was terminated at the time, which would have made it February 2001.

[10] Dr. Elliot admits that these positions were not officially eliminated until October 2002; however, no one was recruited or hired for any of the vacant positions after November 2001.

there were no vacant positions to which Ms. Alexander could have been promoted in February 2002.

### F. Procedural history.

Ms. Alexander filed a complaint on October 15, 2001, alleging disparate treatment on account of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, with respect to discipline, pay, and performance evaluations, as well as retaliation for complaining about the discriminatory employment practices of the defendant. She raised these claims under both Title VII and under 42 U.S.C. § 1981. She filed a second complaint on August 16, 2002, raising retaliation claims under Title VII and § 1981, and alleging that she was denied a raise and a promotion in retaliation for filing an EEOC charge and the previous complaint. The cases were consolidated on September 17, 2002, and the instant motion for summary judgment on all claims was filed on January 15, 2003.

## III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to

present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

**IV. Discussion.**

The plaintiff alleges her claims of race discrimination under both Title VII and § 1981. Because the burden of proof in discrimination claims brought under these two statutes is identical, *see Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002), the court will not provide separate treatment for claims brought under each statute.

**A. Disparate treatment.**

**1. The legal framework.**

Ms. Alexander alleges that she was subjected to disparate treatment discrimination in the terms and conditions of her employment with respect to discipline, pay, and performance evaluations. In other words, Ms. Alexander contends that the Health

Department intentionally discriminated against her because of her race – Caucasian. "Whether an employer intentionally discriminated against an employee ... is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citation omitted). Direct evidence of discrimination is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997).

Absent direct evidence of discriminatory intent, an employee may prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff creates a rebuttable presumption of discrimination by proving a prima facie case of discrimination, which consists of proof that she was: (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) treated differently than a similarly situated individual outside the protected class. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). The defendant can rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for the challenged employment action. *Kelliher*, 313 F.3d at 1275. Once the presumption is rebutted, the employer is entitled to summary judgment unless the plaintiff proffers evidence sufficient to permit a reasonable factfinder to conclude that the reasons articulated by the defendant were mere pretext for discrimination. *Id.*

2. **Direct evidence of discriminatory intent.**

In her deposition, Ms. Alexander pointed to several occasions on which her immediate supervisor, Ms. Williams, commented that she was "too white" as direct evidence of discriminatory intent. The court is of the opinion that these remarks fall woefully short of what constitutes direct evidence under the law of the Eleventh Circuit. These scattered remarks do not "prove[ the] existence of [a racial motivation for the alleged adverse employment actions] without inference or presumption." *Burrell*, 125 F.3d at 1393. Indeed, the Eleventh Circuit has indicated that to be classified as direct evidence of discriminatory intent, a racially charged remark "must indicate that the employment decision in question was motivated by race." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002). Because the remarks purportedly made by Ms. Williams were not related, either directly or indirectly, to any alleged adverse employment actions taken against Ms. Alexander, these remarks cannot establish discriminatory intent. Thus, Ms. Alexander must prove her case using circumstantial evidence and the *McDonnell Douglas* burden-shifting analysis.

3. **Prima facie case.**

The Health Department concedes that Ms. Alexander can establish the first two elements of a prima facie case of race discrimination. As to the third element of the prima facie case – that the plaintiff was subjected to an adverse employment action – the defendant admits that the suspension and termination of Ms. Alexander constitute adverse employment actions. Furthermore, to the extent that the plaintiff's disparate treatment claim with respect to pay is based on the denial of the merit raise in November 2001, the court is

of the opinion that said denial constitutes an adverse employment action. However, as to the plaintiff's claim that her receipt of a negative performance evaluation constituted an adverse employment action, the Eleventh Circuit has held that "[n]egative performance evaluations, standing alone, do not constitute adverse employment action[s]." *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). To the extent that Ms. Alexander's negative performance evaluation contributed to the decision to terminate her and/or to deny her a merit raise, the court has already concluded that those events constitute adverse employment actions. Thus, as to the disparate treatment claim based solely on her negative performance evaluation, Ms. Alexander cannot establish a prima facie case; however, to the extent that the evaluation resulted in an adverse employment action, the court will consider it in conjunction with the other disparate treatment claims.

The fourth element of the prima facie case requires proof that a similarly situated individual outside the protected class (a comparator) was treated more favorably than the plaintiff with respect to the terms and conditions of employment in question. To make a proper comparison between the way she was treated and the way an individual outside the protected class was treated, Ms. Alexander "must show that [s]he and the employee[ ] are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). To be similarly situated for purposes of establishing a prima facie case, a comparator must have been involved in or accused of the same or similar conduct as the plaintiff, but disciplined in a different way than the plaintiff. *Holifield*, 115 F.3d at 1562.

The plaintiff argues that Ms. Davis and Ms. Mardis are appropriate comparators in that they engaged in conduct similar to hers, but were disciplined more leniently than her.

However, the court is of the opinion that neither Ms. Davis nor Ms. Mardis is an appropriate comparator. The plaintiff alleges that Ms. Davis had a run-in with Dr. Williams similar to the plaintiff's run-in with him, and that she too left work early, but Ms. Davis received only one or two "needs improvement" marks on her performance evaluation, while the plaintiff received a four-day suspension and two "below expectations" marks on her performance evaluation. However, Ms. Alexander's only proof of the incident with this alleged comparator is based on inadmissible hearsay – Ms. Alexander was told about the incident by Ms. Davis. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'") (citation omitted). She has no first-hand knowledge to substantiate the allegations, nor has she produced any admissible testimony that would support the allegations. Therefore, Ms. Alexander has not established a prima facie case of disparate treatment to the extent that she relies on Ms. Davis as a proper comparator.

As for Ms. Mardis, as the defendant correctly points out, she is an inappropriate comparator because she was not similarly situated with the plaintiff with respect to job duties: Ms. Mardis is a mail room clerk, while Ms. Alexander is a dental hygienist. *See MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 n.16 (11th Cir. 1991) ("In a comparator analysis, the plaintiff is matched with a person or persons who have *very similar job-related characteristics* and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him.") (emphasis added). Moreover, the conduct engaged in by Ms. Mardis with respect to her jury duty incident is not fairly described as the same or similar to that engaged in by the plaintiff. While Ms. Mardis

mistakenly appeared for a third, unnecessary day of jury duty and proceeded to take the rest of the day off work, Ms. Alexander was told after one day of jury duty that she need not return, yet she failed to return to work for the rest of the week. Therefore, neither Ms. Davis nor Ms. Mardis are proper comparators, and the plaintiff has failed to prove the identity of a similarly situated employee outside the protected class who was treated more favorably than her. As such, she has failed to establish her prima facie case of disparate treatment discrimination.

### 4. Non-discriminatory reason and proof of pretext.

However, even if Ms. Alexander had proven a prima facie case of discrimination, the Health Department has proferred legitimate, non-discriminatory reasons for the plaintiff's suspension and termination (insubordination, neglect of duty, and being AWOL) and her denial of the merit raise (receipt of two "below expectations" scores on her annual evaluation). Therefore, to survive summary judgment, Ms. Alexander must show that a reasonable jury could conclude that the proffered reasons are mere pretext for discrimination. *See Kelliher*, 313 F.3d at 1275. The plaintiff has provided no evidence to suggest that the real reason the Health Department took the adverse employment actions in question was discrimination. Indeed, the individual ultimately responsible for suspending and terminating Ms. Alexander, Dr. Samuelson, is a Caucasian female, which suggests that race was not a motivating factor in those decisions. Because the plaintiff has presented no evidence to support her claim that race was a factor in her discipline, summary judgment is proper as to the disparate treatment claims.

### B. Retaliation.

#### 1. The legal framework.

Because the plaintiff has presented no direct evidence of retaliatory intent, the plaintiff must establish her retaliation claim through circumstantial evidence using the burden-shifting analysis for retaliation claims. To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001) (citations omitted). If she establishes a prima facie case of retaliation, the defendant must proffer a legitimate, non-discriminatory reason for the adverse employment action to rebut the presumption of retaliation. *Holifield*, 115 F.3d at 1566. If the defendant offers a legitimate reason for the employment action, the plaintiff must demonstrate that the proffered explanation is a pretext for retaliation. *Id.*

#### 2. The suspension, termination, and denial of the merit raise.

While the plaintiff's first complaint alleges that she was disciplined and terminated in retaliation for complaining about the Health Department's allegedly discriminatory employment practices, it is clear that her suspension and termination, and the denial of the merit raise,[11] predate the filing of her EEOC charge and the first complaint. Furthermore, there is no evidence to suggest that Ms. Alexander in any other way "complained about" discrimination prior to the filing of the EEOC charge and the first complaint; thus, Ms.

---

[11] Although Ms. Alexander was not notified about the denial of the merit raise until November 2001, she admits that the raise was due to her in February 2001, before she filed her EEOC charge and first complaint.

Alexander cannot show she had engaged in any protected activity at that time. Therefore, to the extent that Ms. Alexander attempts to raise a retaliation claim based on her suspension or termination, or the denial of the merit raise, she cannot establish a prima facie case, and summary judgment is therefore proper as to that claim.

### 3. The denial of a promotion to senior hygienist.

Because it is unclear whether the plaintiff claims she was denied a promotion in February 2001, or February 2002, the court will treat the complaints as citing two separate occasions on which the plaintiff was denied a promotion: one in February 2001, and one in February 2002.

#### a. February 2001.

Assuming that the plaintiff engaged in statutorily protected activity prior to the date in February 2001, on which she contends she was denied a promotion,[12] it is clear from her testimony that Ms. Jones received a promotion in February 2001, while the plaintiff did not. However, assuming these first two elements of the prima facie case have been established, the court is of the opinion that Ms. Alexander can produce no evidence in support of the third element of retaliation – a causal connection between any protected activity and the denial of the promotion. "To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571. 590 (11th Cir. 2000). At no point in her deposition did Ms. Alexander intimate that she

---

[12] The plaintiff did not file a charge of discrimination with the EEOC until February 26, 2001; unless the plaintiff was denied the promotion in question on February 27 or 28, 2001, she cannot establish that she engaged in statutorily protected activity prior to the denial of a promotion in February 2001.

believed she was denied a promotion in February 2001, because she had filed an EEOC charge; rather, she admitted that she was ineligible for a promotion at that time due to her termination. Therefore, Ms. Alexander has not established a prima facie case of retaliation as to a failure to promote in February 2001, and summary judgment is therefore due to be granted as to that claim.

### b. February 2002.

It is clear that by February 2002, Ms. Alexander had engaged in protected activity – she filed an EEOC charge in the end of February 2001, and the first complaint in October 2001. However, the court is of the opinion that Ms. Alexander cannot meet the second element of the prima facie case – that she suffered an adverse employment action – because it finds that there was no available senior hygienist position to which Ms. Alexander could have been promoted in February 2002. It is axiomatic that in order to establish the adverse employment action of non-promotion, the plaintiff must show that there was an available position for which she was qualified and applied. *See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Because the plaintiff cannot show that there was such a position in February 2002, she cannot establish a prima facie case of retaliation, and summary judgment is therefore due to be granted as to any retaliation claim based on a failure to promote the plaintiff in February 2002.

## V. Conclusion.

In sum, the court is of the opinion that there is no genuine issue as to any material fact, and the defendant is entitled to judgment as a matter of law as to all of the plaintiff's

claims. Therefore, summary judgment is due to be, and will be, granted in all respects. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __3rd__ of June, 2003.

L. Scott Coogler
United States District Judge